# BEFORE THE JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

|  |  |
|---|---|
| IN RE: APPLE INC. SMARTPHONE ANTITRUST LITIGATION | ) ) ) )    MDL Docket No. 3113 |

**This Document Relates to:**

**Coronavirus Reporter Corporation v. Apple Inc.,** United States District Court for the District of Wyoming, Case No. 1:24-cv-53

**PhantomALERT v. Apple Inc.,** United States District Court for the District of Columbia, Case No. 1:24-cv-00786

### DEFENDANT APPLE INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO TRANSFER

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1
RELEVANT BACKGROUND ............................................................................................. 2
    I.     MDL Background ............................................................................................. 2
    II.    Coronavirus Reporter's Series of Related App Developer Lawsuits..................... 2
STANDARD OF REVIEW ................................................................................................... 5
ARGUMENT ......................................................................................................................... 6
    I.     Neither *Coronavirus Reporter* nor *PhantomALERT* Are Sufficiently
          Related to Warrant Inclusion in the MDL ............................................................ 6
          A.     Plaintiffs' Complaint Bears Only a Superficial Connection to the
                Consolidated Actions ............................................................................... 7
          B.     Plaintiffs' Attempt to Include *PhantomALERT* Confirms This
                Action is Not Closely Related to the MDL.............................................. 11
    II.    Transfer Would Not Advance the Litigation or Be to the Overall Benefit
          of the Parties ...................................................................................................... 12
CONCLUSION..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accutane Prods. Liab. Litig.*,
    560 F. Supp. 2d 1370 (J.P.M.L. 2008) ...................................................................................8

*In re Air Crash Disaster Near Silver Plume, Colo., on Oct. 2, 1970*,
    368 F. Supp. 810 (J.P.M.L. 1973) .........................................................................................8

*In re Apple Inc. Smartphone Antitrust Litig.*,
    ___ F. Supp. ___, 2024 WL 2884408 (J.P.M.L. 2024) ..................................................2, 7, 10

*In re Aredia & Zometa Prods. Liab. Litig.*,
    429 F. Supp. 2d 1371 (J.P.M.L. 2006) ...................................................................................7

*Coring Co. v. Apple Inc.*,
    No. 9:21-cv-82235, 2022 WL 22762009 (S.D. Fla. Feb. 18, 2022 ........................................8

*Coronavirus Reporter v. Apple Inc.*,
    No. 3:21-cv-05567, 2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ............................2, 12, 13

*Coronavirus Reporter v. Apple Inc.*,
    85 F.4th 948 (9th Cir. 2023) ..........................................................................................2, 3, 10

*Coronavirus Reporter v. Apple Inc.*,
    ___ U.S. ___, 2024 WL 2116338 (May 13, 2024) .................................................................3

*In re Digital Advert. Antitrust Litig.*,
    555 F. Supp. 3d 1372 (J.P.M.L. 2021) .................................................................................10

*In re Eli Lilly & Co. Oraflex Prods. Liab. Litig.*,
    578 F. Supp. 422 (J.P.M.L. 1984) .........................................................................................9

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981) ...............................................................................................................7

*In re Mortg. Elec. Reg. Sys. (MERS) Litig.*,
    659 F. Supp. 2d 1368 (J.P.M.L. 2009) .............................................................................6, 12

*Thompson v. Barrett Daffin Frappier Treder & Weiss*,
    No. 19-56460, 2021 WL 5002414 (9th Cir. 2021) ................................................................8

*In re Truck Accident Near Alamagordo, N.M., on June 18, 1969*,
    387 F. Supp. 732 (J.P.M.L. 1975) .........................................................................................8

*In re Uniloc USA, Inc., & Uniloc Luxembourg, S.A., HPE Portfolio Pat. Litig.*,
    304 F. Supp. 3d 1356 (J.P.M.L. 2018) ...................................................................................7

*In re Wells Fargo Bank, N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig.*,
    959 F. Supp. 2d 1363 (J.P.M.L. 2013)..............................................................................5, 11

**Statutes**

28 U.S.C. § 1407(a) ...............................................................................................................5

**INTRODUCTION**

Plaintiffs Coronavirus Reporter Corp., Greenflight Venture Corp., and Calid Inc. (collectively, "Plaintiffs") seek to transfer into this MDL two cases—*Coronavirus Reporter Corp. v. Apple Inc.*, No. 1:24-cv-00053 (D. Wyo.), and *PhantomALERT v. Apple Inc.*, No. 1:24-cv-00786 (D.D.C.)—arising from Apple Inc.'s ("Apple") alleged rejection of their apps from the App Store for failure to satisfy Apple's generally applicable App Review Guidelines. PhantomALERT has not supported Plaintiffs' request, and, like Apple, forty-nine direct purchaser plaintiffs oppose it. Dkt. 148.

The Clerk already rejected Plaintiffs' first attempt to consolidate these cases into the MDL. *See* Dkt. 130. In response, Plaintiffs have sought to contrive relatedness by copying allegations from the DOJ's suit into their Amended Complaint. But those claims and allegations bear no meaningful relation to the fundamental core of Plaintiffs' case: While the MDL contains cases brought by consumers alleging they were overcharged on iPhone, iPad, and/or Apple Watch purchases as a result of Apple's allegedly anticompetitive conduct, the *Coronavirus Reporter* and *PhantomALERT* plaintiffs are developers of COVID-19 apps seeking to sue Apple over the rejection of their apps pursuant to Apple's COVID-19 Guidelines. Given the different nature of Plaintiffs' claims, allowing them to join the MDL would be inefficient and disruptive, and would lead to disparate factual and legal issues. What is more, Plaintiffs are seeking to use the MDL to evade a *res judicata* bar, as they already litigated their claims to judgment in the Northern District of California—to which Apple has moved to transfer their case. The Panel should reject Plaintiffs' transparent attempt at gamesmanship and deny the Motion to Transfer.

**RELEVANT BACKGROUND**

I.        **MDL Background**

In March 2024, the United States Department of Justice brought a suit alleging that Apple engaged in unlawful monopolization under Section 2 of the Sherman Act with respect to the iPhone and related hardware and software products. *See United States v. Apple Inc.*, No. 2:24-cv-04055 (D.N.J.) (First Amended Complaint attached as Ex. A). Private parties, borrowing extensively from the DOJ's Complaint, filed similar, follow-on complaints pressing identical claims on behalf of classes of individual iPhone purchasers (and, in some cases, iPad or Apple Watch purchasers, too). In June 2024, the Panel consolidated the follow-on actions into MDL 3113 in the District of New Jersey before Judge Neals, the same judge who is overseeing the DOJ case. *In re Apple Inc. Smartphone Antitrust Litig.*, ___ F. Supp. ___, 2024 WL 2884408, at *1–2 (J.P.M.L. 2024).

II.       **Coronavirus Reporter's Series of Related App Developer Lawsuits**

In 2020, Apple rejected Plaintiff Coronavirus Reporter's submission of a COVID-19 app to the App Store because it violated Apple's generally applicable App Review Guidelines "designed to protect consumers." *Coronavirus Reporter v. Apple Inc.*, 85 F.4th 948, 957 (9th Cir. 2023). In response, Coronavirus Reporter (and related app developer entities) then brought repeated, duplicative lawsuits. *See Coronavirus Reporter v. Apple Inc.*, No. 3:21-cv-05567, 2021 WL 5936910, at *5, *18 (N.D. Cal. Nov. 30, 2021) (discussing procedural history of litigation, which by November 2021 had involved "seven[] complaint[s]" by plaintiffs, all of which "fail[ed] to state any claims"); *see also, e.g.*, *Primary Prods. LLC v. Apple Inc.*, No. 21-cv-00137, Dkt. 1 (D. Me.); *Coring Co. v. Apple Inc.*, No. 9:21-cv-82235, Dkt. 1 (S.D. Fla.); *Coronavirus Reporter v. Apple Inc.*, No. 1:21-cv-00047, Dkt. 1 (D.N.H.). These cases, which merged into a single

2

proceeding in the Northern District of California (the "California Litigation"),[1] asserted claims on behalf of app developers and alleged that Apple engaged in monopolistic practices in operating the App Store, that it impermissibly tied the App Store (or other parts of its platform), and/or that it "censored" certain app developers and treated them unfairly—including by charging a $99 fee to developers who wish to distribute apps on the App Store and by improperly rejecting some app submissions. *See, e.g.*, Ex. D ¶¶ 43, 259–62, 163. Those antitrust theories were rejected on the merits, including on appeal, *Coronavirus Reporter*, 85 F.4th at 957, and the Supreme Court denied Plaintiffs' certiorari petition, *see* ___ U.S. ___, 2024 WL 2116338 (May 13, 2024).[2]

On March 5, 2024, Plaintiffs filed yet another lawsuit, this time in Wyoming (the "Wyoming Litigation"), Ex. B, rehashing the same claims from the California Litigation, *see* Exs. B & D. In both the Wyoming Litigation and the California Litigation, Plaintiffs asserted, often using identical language, that Apple implemented "interstate restriction" of smartphone "userbase access" (Ex. B, ¶¶ 141–53, Ex. D ¶¶ 160–79); restricted access to "essential facilities" (branded as an "*Aspen Skiing* claim" in the Wyoming Litigation) (Ex. B ¶¶ 154–72, Ex. D ¶¶ 180–94); imposed an "unreasonable restraint of trade" through its Developer Program License Agreement (Ex. B ¶¶ 173–84, Ex. D ¶¶ 195–206); engaged in "ranking suppression as restraint of interstate trade"

---

[1] Specifically, Coronavirus Reporter's New Hampshire case was voluntarily dismissed after the court granted Apple's motion to change venue to the Northern District of California, 1:21-cv-00047, Dkts. 33, 40 (D.N.H.), after which Coronavirus Reporter brought a new, copycat suit in the Northern District of California. Coring Co.'s and Primary Productions' cases were transferred to the Northern District of California, where they were subsequently dismissed voluntarily. *See Coring Co. v. Apple Inc.*, 9:21-cv-82235, Dkt. 36 (S.D. Fla.); *Coring Co. v. Apple Inc.*, No. 3:22-cv-01044, Dkt. 49 (N.D. Cal.); *Primary Prods. LLC v. Apple Inc.*, No. 2:21-cv-00137, Dkt. 28 (D. Me.); *Primary Prods. LLC v. Apple Inc.*, No. 3:21-cv-06841, Dkt. 36 (N.D. Cal.). Some of the plaintiffs in those suits joined the California Litigation via amendment.

[2] In the California Litigation, Plaintiffs have moved to vacate the judgment against them under Federal Rule of Civil Procedure 60. No. 3:21-cv-05567, Dkt. 118 (N.D. Cal.).

3

(Ex. B ¶¶ 185–190, Ex. D ¶¶ 207–12); "t[ied] the App Store, notary stamps, and software onboarding to the iOS device market" (Ex. B ¶¶ 191–205, Ex. D ¶¶ 213–30); and "violat[ed] . . . [the] Sherman Act § 2 - $99 fee illegality" (Ex. B ¶¶ 206–15, Ex. D ¶¶ 231–40). Apple moved to transfer the Wyoming Litigation to the Northern District of California—both as a matter of convenience as well as pursuant to the forum-selection clause that binds Plaintiffs—so that the court that previously resolved Plaintiffs' case can adjudicate the overlapping issues and Apple's *res judicata* defense. *See* No. 1:24-cv-00053, Dkt. 20 at 4–10 (D. Wyo.).[3]

A different developer, PhantomALERT, separately sued Apple on March 18, 2024, in the U.S. District Court for the District of Columbia. Ex. E. PhantomALERT's complaint is a near-facsimile of the one dismissed in *Coronavirus Reporter*. PhantomALERT, like Coronavirus Reporter, was an eponymous app rejected from the App Store in the spring of 2020 under Apple's guidelines governing COVID-related apps. Ex. E ¶ 12; Ex. C ¶ 102. PhantomALERT, like Coronavirus Reporter, alleges that Apple acted unlawfully in restricting distribution of COVID-related apps because it (supposedly) did so in furtherance of its own desire to "monopolize the tech response to Covid-19." Ex. E ¶ 13; *see also* Ex. C ¶ 102; Ex. D ¶¶ 65–66. Both PhantomALERT and Coronavirus Reporter allege that Apple is a monopolist in some market for distribution of apps for the iPhone. Ex. E ¶ 57; Ex. D ¶ 147; Ex. C ¶ 337. And PhantomALERT also alleges, like Coronavirus Reporter now does, that Apple violated Section 1 of the Sherman Act by tying iPhones and the App Store. Ex. E ¶¶ 46–53; Ex. C ¶¶ 287–305; Ex. D ¶¶ 213–30. Apple's motion to dismiss PhantomALERT's complaint is fully briefed.

---

[3] On August 5, 2024, the Wyoming court stayed proceedings in *Coronavirus Reporter Corp. v. Apple Inc.* pending resolution of this motion. *See* 1:24-cv-00053, Dkt. 33 (D. Wyo.).

On June 24, 2024, Plaintiffs made their first attempt to transfer the new Wyoming *Coronavirus Reporter* litigation and *PhantomALERT* into the MDL, Dkt. 124-3, which the Clerk rejected, Dkt. 130. In response, Plaintiffs filed an Amended Complaint in the Wyoming Litigation—their ninth complaint against Apple—and again moved to transfer that case into the MDL. While the Amended Complaint dresses up the original allegations by adding scores of paragraphs copied from the DOJ's Complaint—and tacks on claims for monopolization and attempted monopolization of the smartphone and "performance smartphone" markets as defined by the DOJ—it retains the same core set of allegations as the original Complaint: A Section 1 tying claim involving alleged "notary stamps" and the App Store (Ex. B ¶¶ 191–205, Ex. C ¶¶ 287–305); a Section 2 claim challenging Apple's $99 developer fee (Ex. B ¶¶ 206–15, Ex. C ¶¶ 306–14); a refusal-to-deal claim (Ex. B ¶¶ 154–72, Ex. C ¶¶ 315–31); and a claim for ranking "suppression" or "manipulation" (Ex. B ¶¶ 185–90, Ex. C ¶¶ 332–37). None of those claims rely on material taken from the DOJ Complaint; they are holdovers from the Wyoming Litigation's original Complaint (and, indeed, the California Litigation) that the Clerk found unamenable for inclusion in the MDL. *See supra* at 3–4. Apple will move to dismiss Plaintiffs' claims in the Wyoming Litigation on *res judicata* grounds (among others).

## STANDARD OF REVIEW

The Panel may transfer proceedings into a multidistrict litigation when "actions involve[e] one or more common questions of fact," "are pending in different districts," and when the Panel determines "that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The Panel considers whether "individualized discovery and legal issues [are] likely to be numerous and substantial," *In re Wells Fargo Bank, N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig.*, 959 F.

5

Supp. 2d 1363, 1364 (J.P.M.L. 2013), and looks to whether consolidation would advance "the overall benefit of the parties," *In re Mortg. Elec. Reg. Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 (J.P.M.L. 2009).

## ARGUMENT

The claims in *Coronavirus Reporter* and *PhantomALERT* are those of disgruntled app developers challenging Apple's right to reject apps that do not meet its generally applicable App Review Guidelines. Plaintiffs' gambit of incorporating portions of the DOJ's Complaint does not alter the basic calculus: The gravamen of Plaintiffs' case has not changed and raises a host of different issues than the cases now in the MDL. Because transferring *Coronavirus Reporter* and *PhantomALERT* to the MDL would be inefficient and disruptive, the Panel should deny Plaintiffs' Motion to Transfer.

**I.      Neither *Coronavirus Reporter* nor *PhantomALERT* Are Sufficiently Related to Warrant Inclusion in the MDL**

The Panel should reject Plaintiffs' attempt to circumvent the Clerk's determination that *Coronavirus Reporter* and *PhantomALERT* are "not appropriate for inclusion in this MDL." Dkt. 130. The thrust of Plaintiffs' renewed request rests on their addition of allegations from DOJ's complaint. But that superficial change to Plaintiffs' complaint does not resolve the fundamental distinctions between their case and those in the MDL, and Plaintiffs identify no pertinent change whatsoever to the posture of PhantomALERT's case. In short, these cases will involve different issues as they implicate different alleged markets, different theories of liability, different putative classes, and different theories of harm.

A. **Plaintiffs' Complaint Bears Only a Superficial Connection to the Consolidated Actions**

The MDL is made up of putative classes of iPhone and Apple Watch purchasers who allege they paid supracompetitive prices for their devices as a result of Apple's alleged monopolization of a "smartphone" market. *See* 2024 WL 2884408 at *1. Plaintiffs' attempts to contrive a connection between those cases and theirs is a transparent bid to avoid the appropriate forum for Plaintiffs' claims—the Northern District of California—where their predecessor suit was already litigated and where the issue of *res judicata* can be most efficiently resolved. For at least five reasons, the Panel should reject Plaintiffs' attempt to launder their barred claims into the MDL. *See In re Aredia & Zometa Prods. Liab. Litig.*, 429 F. Supp. 2d 1371, 1372–72 (J.P.M.L. 2006) (rejecting inclusion of superficially similar cases in an MDL where "[m]ovants . . . failed to persuade . . . that any common questions of fact . . . [were] sufficiently numerous to justify Section 1407 transfer"); *In re Uniloc USA, Inc., & Uniloc Luxembourg, S.A., HPE Portfolio Pat. Litig.*, 304 F. Supp. 3d 1356, 1357 (J.P.M.L. 2018) (rejecting consolidation of cases in MDL that were merely a "conglomeration" of interrelated cases involving different products and technologies).

**1.** Faced with the Clerk's rejection of their first attempt to join this MDL, Dkt. 130, Plaintiffs fabricate superficial similarities by splicing several of the DOJ's allegations into their otherwise unrelated Amended Complaint. But this only highlights the first reason the Panel should reject Plaintiffs' motion: Plaintiffs' claims are subject to a unique and dispositive *res judicata* defense, and their attempt to transfer into the MDL to avoid swift dismissal of their claims is an abuse of the MDL process. Plaintiffs already litigated their claims to a final judgment on the merits in the California Litigation, which was affirmed on appeal. *See supra* at 4; *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398–99 (1981) (describing the application of *res judicata*). That Plaintiffs added a hodgepodge of allegations from DOJ's complaint will not save

7

their case from dismissal because, when "the injury [a plaintiff] seeks to redress remains the same," res judicata bars successive suits related to that injury even if "the labels and form of [the] claims vary at times from those raised in [the] earlier actions." *Thompson v. Barrett Daffin Frappier Treder & Weiss*, No. 19-56460, 2021 WL 5002414, at *1 (9th Cir. 2021).  Transfer does not "serve the convenience of the parties and witnesses" or "promote the just and efficient conduct of litigation" where, as here, the MDL process is abused "as a means of further delaying a final resolution of [a plaintiff's] claims against [a defendant]." *In re Air Crash Disaster Near Silver Plume, Colo., on Oct. 2, 1970*, 368 F. Supp. 810, 811 (J.P.M.L. 1973); *see also In re Truck Acc. Near Alamagordo, New Mexico, on June 18, 1969,* 387 F. Supp. 732, 734 (J.P.M.L. 1975) (denying transfer motion in light of plaintiff's "ulterior motive for seeking transfer," which "amount[ed] to an attempted misuse of the statute").

Although Plaintiffs have *admitted* elsewhere that they filed complaints outside the Ninth Circuit to try to forestall inevitable dismissal, *Coring Co. v. Apple Inc.*, No. 9:21-cv-82235, Dkt. 1 ¶ 97 (S.D. Fla.), the Panel need not resolve the merit of Apple's *res judicata* argument to deny transfer: The mere existence of a unique legal issue "potentially dispositive of the entire action" militates against transfer.  *See*, *e.g.*, *In re Accutane Prods. Liab. Litig.*, 560 F. Supp. 2d 1370, 1370–71 (J.P.M.L. 2008).  That is particularly true here because *res judicata* is an issue that Judge Chen, who presided over the past iteration of Plaintiffs' case in California, is uniquely well positioned to resolve—which explains Plaintiffs' brazen steps to evade his courtroom. *See Coring Co. v. Apple Inc.*, No. 9:21-cv-82235, 2022 WL 22762009, at *2 (S.D. Fla. Feb. 18, 2022) (transferring case to the Northern District of California because "the *res judicata* question posed by the November 2021

dismissal of [principal's] substantially identical claims is of public interest to the Northern District of California").[4]

**2.** Even setting aside Plaintiffs' preclusion problem, their allegations are distinct from—and therefore will entail different issues and discovery than—those in the MDL. For example, Plaintiffs' allegations focus on Apple's review process for COVID-related apps, Ex. C ¶¶ 87–114, which are subject to a different Guideline and set of alleged restrictions than the "super apps" and cloud gaming apps at issue in the MDL, Ex. A ¶¶ 60–79. Further, Plaintiffs' case involves a host of supposed products and alleged conduct not at issue (or even mentioned) in the MDL. *See, e.g.*, Ex. C ¶¶ 6, 48, 75–77, 219–229 (seeking to impose liability for Apple's alleged use of "notary stamps" in its app approval process and $99 developer fee). Those and other differences mean that Plaintiffs' claims would involve distinct issues and require bespoke discovery. *See In re Eli Lilly & Co. Oraflex Prods. Liab. Litig.*, 578 F. Supp. 422, 423 (J.P.M.L. 1984) ("Although we recognize that the actions in this litigation involve some common questions of fact, we are not persuaded that these common questions of fact will, in the future course of this litigation, predominate over individual questions of fact present in each action.").

**3.** Plaintiffs' case also involves a different set of alleged markets, which similarly raises distinct legal issues and would require distinct discovery. The alleged markets undergirding Plaintiffs' claims are those for "app distribution services," Ex. C ¶¶ 205–12, for U.S. smartphone apps, *id.* ¶¶ 213–18, and for "iPhone notary stamps," *id.* ¶¶ 219–30. Those markets are not alleged

---

[4] Making matters worse, Plaintiffs are also attempting to resist the forum selection clause by which they are bound. *See Coring Co. v. Apple Inc.*, No. 9:21-cv-82235, Dkt. 1 ¶ 97 (S.D. Fla.) (acknowledging predecessor suit was brought in Florida because "Apple's forum selection clause largely limits prosecution of Sherman [Act] violations, as both end-users and developers are bound to Ninth Circuit law," and in hopes that "Eleventh Circuit law can finally bring a proper resolution to this important matter of national, and international, urgency").

9

in any of the MDL cases. As a result, they would not only entail different discovery but also raise their own issues of law: As the Ninth Circuit held in *Coronavirus Reporter*, Plaintiffs' markets are "scattergun," ill-defined, and improperly one-sided. 85 F.4th at 956. As defining and proving the relevant markets is "a core factual issue" in antitrust cases—one that "affect[s] all actions" in consolidated proceedings—the significant differences in Plaintiffs' allegations further counsel against transfer. *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1376, 1378 (J.P.M.L. 2021).

    **4.** Beyond these differences in the alleged conduct and markets, Plaintiffs' case also advances different theories of liability than those in the MDL. The MDL plaintiffs claim under Section 2 of the Sherman Act and various state laws that Apple monopolized the "smartphone market" and thereby caused iPhone and Apple Watch buyers to pay overcharges on their device purchases. *See* 2024 WL 2884408 at *2. But Plaintiffs are alleged developers, not iPhone or Watch purchasers, and their alleged injuries are different than those alleged in the MDL. Ex. C ¶¶ 47–49; Ex. E ¶ 24. And they bring several claims found nowhere in any of the MDL cases, including for "ranking manipulation," Ex. C ¶¶ 332–37, tying "between [performance] smartphones/iPhone devices and notary stamps/App Stores," *id.* ¶¶ 287–305, and a "supra-competitive $99 fee class action recovery fund," *id.* ¶¶ 306–14. All of those theories are carry-overs from the original complaint, which the Clerk rightly found improper for inclusion in the MDL. Dkt. 130.

    To be sure, Plaintiffs have sought to paste the DOJ's claims into their Amended Complaint. *See, e.g.*, Ex. C ¶¶ 9–20, 24–35, 40–43, 50–53, 79–86, 135–60, 167–204, 238–48. But that is a red herring: Plaintiffs are not iPhone purchasers, and their alleged injuries—paying an annual developer fee and having their apps rejected or supposedly "suppress[ed]," Ex. C ¶ 334—have

10

nothing to do with iPhone prices. Indeed, Plaintiffs do not meaningfully connect the allegations they copied from the DOJ's complaint about monopolization of an alleged smartphone or "performance smartphone" monopoly, *id.* ¶¶ 15, 34, 86, to their alleged experience. The Panel should not indulge Plaintiffs' attempt to game the MDL process by lifting allegations from one complaint that are wholly disconnected to the core of their claims.

5. Finally, Plaintiffs seek to represent different classes that have at most incidental overlap with those alleged in the MDL. Unlike the cases consolidated in the MDL, which are brought on behalf of iPhone or Apple Watch purchasers, Plaintiffs' Amended Complaint alleges classes of "U.S. Smartphone developers of any free app (zero-priced) that suffered economic losses through disallowance, censorship, and/or ranking suppression on the App Store," Ex. C ¶ 252, as well as "[a]ny US [Performance] Smartphone developer who paid a $99 annual subscription fee to Apple for access to its userbase and/or app 'notarization,'" *id.* ¶ 254. To the extent that Plaintiffs state any claim, resolving those class issues would require developing a different factual record involving a different group of plaintiffs allegedly harmed in a different way than the device purchasers in the MDL. Resolving Plaintiffs' claims would thus involve discovery with minimal—if any—overlap with the discovery necessary to resolve the core MDL claims, providing yet another reason why transfer would be inappropriate. *See In re Wells Fargo Bank, N.A., Mortg. Corp. Force-Placed Hazard Ins. Litig.*, 959 F. Supp. 2d 1363, 1364 (J.P.M.L. 2013) (stating that the Panel looks to whether "individualized discovery" issues are "likely to be numerous and substantial" in deciding whether to consolidate cases).

      **B.**    **Plaintiffs' Attempt to Include *PhantomALERT* Confirms This Action is Not Closely Related to the MDL**

Plaintiffs acknowledge that *PhantomALERT* is a "facsimile" of the original California *Coronavirus Reporter* litigation. *See* Dkt. 133-1 at 5. That admission effectively concedes that

11

Plaintiffs' attempt to copy in parts of DOJ's case is a sham. PhantomALERT has not supported transfer or tried to manufacture relatedness, and its claims indisputably turn on distinct markets, putative classes, and theories of liability. *See* Ex. E ¶¶ 10–14 (framing case as being centrally concerned with Apple's rejection of a COVID-related app under App Review Guidelines, and alleging that Apple was motivated by its desire to offer its own COVID-related app); *id.* ¶ 24 (stating that claim is brought on behalf of individual app developer); *id.* ¶¶ 46–53, 54–58 (bringing Sherman Act claims alleging unlawful tying of App Store and iPhones and unlawful monopolization of "access to apps on Apple devices"). Indeed, the Clerk already determined that *PhantomALERT* should not be transferred, and Plaintiffs offer no reason why the Panel should conclude otherwise now. Plaintiffs' recognition that their claims remain of a piece with *PhantomALERT* thus underscores that this transfer request is improper and should be denied.

**II.     Transfer Would Not Advance the Litigation or Be to the Overall Benefit of the Parties**

Finally, including *Coronavirus Reporter* in the MDL would not be to "the overall benefit of the parties," *In re MERS Litig.*, 659 F. Supp. 2d at 1370, given Plaintiffs' extensive history of disruptive litigation conduct that frustrates the orderly and expeditious resolution of disputes. The list of Plaintiffs' vexatious filings is long, but a few examples from the California Litigation prove the point:

- Plaintiffs sought to summon FTC Chair Lina Khan and Apple executives to a preliminary injunction hearing in which no live testimony had been authorized through state-court subpoenas. *Coronavirus Reporter v. Apple Inc.*, No. 3:21-cv-05567, Dkts. 67, 74 at 1–4 (N.D. Cal.). The district court stated that both notices "ha[d] no effect in federal court and were improper." 2021 WL 5936910 at *20.

12

- Plaintiffs filed successive and duplicative motions for preliminary injunctions, which were supported by zero evidence and which were denied. *Coronavirus Reporter v. Apple Inc.*, No. 3:21-cv-05567, Dkts. 20, 52; 2021 WL 5936910 at *18.

- Plaintiffs sought to improperly amend their complaint without the required leave of the Court through an "addendum," which the Court recognized was a "nullity." 2021 WL 5936910 at *18.

- Plaintiffs' principal filed a motion for sanctions barred by the Local Rules, which the Court summarily rejected. *Coronavirus Reporter v. Apple Inc.*, No. 3:21-cv-05567, Dkts. 97, 100 (N.D. Cal.).

On top of this, Plaintiffs often attack (without basis) the integrity of Apple and its counsel—even after one court "cautioned Plaintiff's counsel about the use of *ad hominem* references to opposing counsel." *Primary Prods. v. Apple Inc.*, No. 2:21-cv-00137, Dkt. 19 (D. Me.). Proceedings in this MDL will already be complex and will require collegial coordination between all parties. As 49 existing MDL plaintiffs explained in their brief, they see their claims as distinct from those at issue in this motion, Dkt. 148 at 2, and inclusion of *Coronavirus Reporter* would risk interfering with and delaying the orderly resolution of the 44 already-pending actions.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion to transfer this case into MDL 3113.

Dated:  August 22, 2024                              Respectfully submitted,

                                                     /s/ *Cynthia E. Richman*
                                                     Cynthia E. Richman
                                                     GIBSON, DUNN & CRUTCHER LLP
                                                     1050 Connecticut Avenue, N.W.
                                                     Washington, D.C. 20036-5306
                                                     Telephone: 202.955.8500
                                                     Facsimile: 202.467.0539
                                                     CRichman@gibsondunn.com

                                                     *Counsel for Defendant Apple Inc.*